417 So.2d 1243 (1982)
Harold P. STINE
v.
Hayward CREEL; Wayne Creel; Crown Zellerbach Corporation; John Doe; George Doe; and Liberty Mutual Insurance Company.
No. 14710.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Rehearing Denied August 24, 1982.
*1244 Joseph R. Raggio, Baton Rouge, for plaintiff.
Richard F. Knight and E. B. Dittmer, II, Talley, Anthony, Hughes & Knight, Bogalusa, for defendants James Box, George Grosche, Elmer Mays, Otto Stupka, Clyde Swilley and Clark Worsham.
Richard W. Brown, Seal, Lee, Branch & Brown, Bogalusa, for Wayne Creel.
A. R. Christovich, New Orleans, for Liberty Mut. Ins. Co. and Crown Zellerbach Corp.
Rudolph R. Schoemann, New Orleans, for Security Ins. Co.
France W. Watts, III, Franklinton, for Hayward Creel.
Before LEAR, COLE and WATKINS, JJ.
LEAR, Judge.
W. Hayward Creel had contracted with Crown-Zellerbach (Crown) to repair the roof of a warehouse owned by Crown. Harold Stine, a union employee, who was working for Creel in repairing Crown's building, suffered personal injuries on December 18, 1973, when he fell through the roof of Crown's warehouse, which he was then engaged in repairing. Stine also sued certain individual employees of Crown as "executive officers", alleging that these individuals breached a duty owed to him by Crown and delegated to them. Third party demands were filed by these executive officers against Creel and his insurer, Security Insurance Company.
After a trial on the merits, the court found that plaintiff's contributory negligence was in fact the cause of his injuries and dismissed his suit, as well as the third party demands of the individual defendants. Plaintiff has appealed from this judgment, and the third party defendants have answered the appeal seeking recognition of their claims, in the event that the trial court's decision is reversed by us.
After considering this extensive record and the briefs filed by the parties, we find that the trial court correctly resolved all factual and legal issues presented to it. The trial court, in lengthy and well reasoned written reasons for judgment, which we adopt, held as follows:
"Harold P. Stine brought this action for damages against W. Hayward Creel, Crown Zellerbach Corporation and its insurer, Liberty Mutual Insurance Company, and several individuals alleged to be executive officers of Crown Zellerbach Corporation.
"Crown Zellerbach operates a large paper manufacturing plant in Bogalusa, Louisiana. Due to the size of its operation, in 1973, Crown Zellerbach had a maintenance force of approximately 330 persons. This maintenance crew included electricians, machinists, instrument people, millwrights, welders, carpenters, tinsmiths, and brick masons. The maintenance force had the capacity to handle most any of the repairs and maintenance that might be required at the mill site, including roof replacement and repair. In fact, roof repairs were often made by this maintenance team.
*1245 "Warehouse No. 3 is situated on the mill property in Bogalusa. This warehouse is a large, enclosed building, with a concrete floor. The roof is of sheet metal construction, and through the years various sealants were placed on the tin roof to keep it waterproof.
"Warehouse No. 3 was used principally for the storage of spare parts to be used by the maintenance crew in keeping the mill operative. It also housed other equipment and materials that were connected with the mill operation.
"In 1973 Crown Zellerbach management elected to repair a portion of the roof that was in such disrepair that it no longer protected the stored parts and equipment from rain. The job called for the removal and replacement of the sheet metal roof in the affected area.
"Due to other repair and maintenance demands, Crown Zellerbach management elected to secure an outside contractor to do the work, rather than use its own men for the job.
"The Crown Zellerbach maintenance force had the capacity for this job, and had, on at least one prior occasion, repaired the roof in question.
"W. Hayward Creel, a general contractor in Bogalusa, was awarded the job. Creel had contracted with Crown Zellerbach on numerous prior occasions for repair jobs, some of which included high work. The Warehouse No. 3 job did involve high work, since the peak of the roof extended at least 70 feet above the floor of the warehouse.
"After having been awarded the job, Creel went to the union hall with a request for workers with experience in high work. Stine was one of those made available by the union.
"The job commenced in early December 1973, with Creel's son, Wayne Creel, working as the on-job supervisor. Of the workers, Stine appeared to be most experienced in high work, and Wayne Creel designated him lead man or foreman on the roof.
"Ropes were the only safety devices made available to the men working on the roof. These ropes were purchased by Creel, and Wayne Creel instructed the men to keep the ropes tied to their waists and secured to a purlin when working on the roof. No harness or cradle was provided the workers by Creel, and no safety net was placed under them.
"After execution of the contract with Creel, Crown Zellerbach did not involve itself with the mechanics of the job. Crown Zellerbach assumed no responsibility for the safety of the men on the job. The total extent of Crown Zellerbach's involvement as the job progressed was for one Crown Zellerbach employee, traveling on a bicycle, to periodically ride by to check on the number of employees on the job, the on-site location of materials, with the purpose of reporting the progress of the job.
"On December 18, 1973, about 8 days after the job begain [sic], Stine sustained a fall of 50-70 feet to the floor of the warehouse. He survived the fall, but received extensive, serious, and totally disabling injuries.
"Stine's fall came as he and another employee were removing a section of the old roof. The removal process involved loosening the section or sections of tin from the underlying purlins at the top and sides and rolling it to its lower extremity. The lower end would then be knocked loose from the purlin, and the roof section rooled off the roof. The workers were instructed by Wayne Creel, almost daily, to use their ropes, and secure themselves to purlins before working around the open areas left by removal of a section of roof. No ropes were in use at the time of Stine's accident, and as Stine and another employee rolled the roof section to its lower end, the section `shifted' (apparently as a result of some of the securing rivets breaking loose), broke loose, and fell to the floor of the warehouse. Stine followed it down.
"Stine's employer, W. Hayward Creel, was a sole propiretor [sic], doing business as W. Hayward Creel, Contractor. Creel and his insurer, Security Insurance Company of Hartford, provided Stine with workmen's *1246 compensation benefits, and W. Hayward Creel was rightly dismissed from this case on a motion for summary judgment.
"Any claim against Wayne Creel was rendered unenforceable by his discharge which followed the filing of a voluntary petition in bankruptcy.
"Stine contends that Crown Zellerbach is strictly liable for his injuries under RCC 2322 and 2317. The facts of this case, however, paint a scenario far outside the boundaries of liability established by these articles and the case law.
"RCC 2322 provides:
"`The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.'
"In this instance, Stine was going about a repair job to keep the building from falling to ruin. Crown Zellerbach was repairing and protecting its property. One of the obvious effects of this job would be to avoid the very liability imposed by RCC 2322. Olsen v. Shell Oil Co., [La.] 365 So.2d 1285, will not impose liability in this instance. It was not the ruin of the roof that caused the fall and resulting injuries to Stine. It was the unsafe manner by which Stine sought to remove the roof section that caused his fall. To follow the rationale of Stine would be to place strict liability upon any owner who went about repairing a building. To the contrary, the law should and does encourage owners to repair. If they elect not to repair, then the owner is strictly liable for damages resulting from the ruin or collapse of his building.
"Further, RCC 2317 gives Stine no relief. Clearly Crown Zellerbach had custody of the warehouse. But the roof of the building, under the facts of this case, does not constitute a defective thing that caused injury to Stine. Again, it was not the roof that caused the injuryit was the manner about which Stine sought to remove it that caused the injury.
"This Court is also firmly convinced that Stine was a statutory employee of Crown Zellerbach. It is clear that storage facilities are absolutely necessary for an operation such as Crown Zellerbach has in Bogalusa. The proper storage and maintenance of spare parts and materials are mandatory to keep such a large mill in operation. Crown Zellerbach had the capacity to do the repair job and it has been its customary practice to perform such repairs. Such repairs were a part of its regular business, and clearly not new construction.
"Therefore, all demands against Crown Zellerbach and its insurer will be dismissed with prejudice.
"The Court is convinced that the accident was caused by the negligence of Stine in not securing himself to the roof by rope, together with his apparent inattentive manner by which he participated in the roof removal procedure.
"Having reached this conclusion, it becomes unnecessary to determine whether or not the defendantsCrown Zellerbach employees and retired employeeswere executive officers and whether or not they were negligent toward Stine.
"Accordingly, all demands of the plaintiff will be dismissed with prejudice. All third party demands will likewise be dismissed with prejudice."
For the foregoing reasons, the judgment of the trial court in all respects is hereby affirmed and the relief sought by the appellees in their answers to this appeal is hereby denied. All costs, both at trial and on appeal, are to be paid by plaintiff-appellant, Harold P. Stine.
AFFIRMED.
COLE, J., concurs in the result.