Stephen T. **LADUE**

v.

**CHEVRON, U.S.A., INC.**

**Civ. A. No. 89–3193.**

United States District Court,
E.D. Louisiana.

March 26, 1990.

Richard V. Kohnke, Edward F. Kohnke, IV, New Orleans, La., for plaintiff.

George B. Jurgens, III, New Orleans, La., for defendant.

McNAMARA, District Judge.

Before the court is the Motion of Defendant, Chevron, U.S.A., Inc., for Summary Judgment. Plaintiff, Stephen T. Ladue, opposes this Motion, and submitted a Cross–Motion for Summary Judgment for his claim under La. Civ.Code Ann. art. 2317 (West 1990). The Motions, set to be heard on Wednesday, March 21, 1990, are before the court on briefs, without oral argument.

Plaintiff, an employee of Bama Contractors ("Bama"), sued Chevron for an injury he sustained on May 20, 1989, while Bama was performing a construction project on Chevron's South Pass 78D oil and gas production facility located off the coast of Louisiana. Bama had entered into a construction contract with Chevron through which Bama agreed, as an independent contractor, to change out the grating decks on the 78D platform which were old and deteriorated. Plaintiff had been hired by Bama to work as a roustabout helper in the crew which was replacing the grating on the structure.

In performing the repairs, the Bama crew would cut out one piece of grating, lift it out of the grating deck, and immediately replace it with another piece of grating which was then welded to the platform's structural I–beams. The grating was sequentially replaced, proceeding from one side of the platform to the other. Plaintiff's accident occurred while Bama was attempting to remove a section of grating which was 1½ feet wide by 7 feet long. The sides of this grating rested on two 12–inch structural beams, and six inches of the grating extended over the beams. The welds holding this particular piece of grating to the beams had been cut by the Bama crew. Immediately adjacent to, and flush with, the southern edge of this piece of grating was new grating which Bama had just installed. This new grating was supported by the same 12–inch

structural beams as the piece which was being removed. At the time of the accident, Plaintiff was standing on a 1½ foot section of grating which was immediately adjacent to and flush with the northern edge of the piece that was being removed. The piece on which he was standing had been cut free from one beam, and was the very next piece of grating to be removed by Bama. As Plaintiff reached down to pick up the grating that was being moved, the old piece upon which he was standing broke loose, resulting in his fall.

During the time that Bama was performing its work, Mr. Atley Davis, a Chevron pumper gauger, was the only Chevron representative present at the job-site. Davis's job was to point out to Bama's foreman the area of the platform deck that Bama should replace. Deposition of Davis, pp. 70 & 78. Additionally, Davis acted as a "fire watch" while Bama was using cutting torches on the platform. His duty was to man a fire extinguisher in the event of an unwanted fire. Davis, however, did not participate in, nor supervise, the work performed by Bama. He did not tell the Bama employees how they should do their job, nor did Davis give them any orders concerning the performance of their work.

The court finds that there are no material facts in dispute in this matter. As such, the issues are to be resolved as a matter of law.

Plaintiff sued Chevron under La.Civ. Code Ann. arts. 2315, 2317, and 2322 (West 1990), alleging negligence and strict liability theories of recovery. The court will address each aspect of Plaintiff's claim.

### 1. Negligence

Under Louisiana law, a principal generally owes no duty to the employees of its independent contractor for the negligent acts of the independent contractor. *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548 (5th Cir.1987), *cert. denied,* 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988); *Hyde v. Chevron,* 697 F.2d 614 (5th Cir.1983). This rule was explained in *Cornish v. Ford, Bacon & Davis Constr. Corp.,* 304 So.2d 361, 366 (La.Ct.App. 1st Cir.1974), *writ denied,* 305 So.2d 123 (La.1975). The court noted that

> an owner is not liable to third parties for the negligent acts of a contractor where the contractor undertakes performance of work pursuant to a contract in which the owner furnishes plans and specifications, and possesses only the right to insist that the job be performed in accordance with the contract plans and specifications.

There are two exceptions to the general rule that exonerates a principal for the offenses of his independent contractor. First, a principal can be liable if the work undertaken is an ultrahazardous activity. *Hawkins v. Evans Cooperage Co., Inc.,* 766 F.2d 904, 906 (5th Cir.1985). Second, a principal may be liable for the acts of an independent contractor over which it has exercised operational control, or for acts the principal has expressly or impliedly authorized. *Id.*

### A. Operational Control

▪ Chevron contracted with Bama to perform the change out of old grating on its South Pass 78D Structure. Chevron representatives neither gave orders nor instructions to Bama's employees regarding the details of how they should perform the task. Based upon Plaintiff's deposition testimony, as well as the testimony of the Bama foreman, the court finds that at no time did any Chevron representative supply instructions or otherwise supervise the methods and operations of Bama in the performance of its work. All job orders were given by Bama's supervisor, Jimmy Goleman. This arrangement was totally consistent with the language contained in Chevron's contract with Bama that clearly stated that Bama would perform its work as an independent contractor. The only Chevron employee who was present was the pumper gauger, Atley Davis, and he did not give any directions to Bama regarding the manner in which the work was to be performed.

▪ The court finds, therefore, that Chevron did not have any operational control over Bama. Nor did Chevron impliedly

or expressly authorize the manner in which Bama performed its duties. Moreover, Chevron cannot be held liable for not supervising the work of its independent contractor. *Ainsworth*, 829 F.2d at 551; *Kent v. Gulf States Utilities*, 418 So.2d 493 (La. 1982).[1]

## B. *Ultrahazardous Activity*

■ The second exception to a principal's exoneration from liability for the acts of its independent contractor is when the contractor is engaged in an ultrahazardous activity. Whether an activity is ultrahazardous is a question of law to be decided by the court. *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1266 (5th Cir.1985). The *Perkins* court delineated three criteria which must be satisfied in order for an activity to be characterized as ultrahazardous:

1. The activity must be related to land or to other immovables.

2. The activity itself must cause the injury, and the defendant must have been engaged directly in the injury-producing activity.

3. The activity must not require the substandard conduct of a third party to cause the injury. *Id.* at 1267–68.[2]

Activities which are traditionally considered ultrahazardous include pile driving, storage of toxic gas, crop dusting with airplanes, and blasting with explosives. *Kent*, 418 So.2d at 498.

The court's examination of this issue reveals two cases involving similar activities. Both of these decisions held that the activities were not ultrahazardous. In *Triplette v. Exxon Corp.*, 554 So.2d 1361 (La.Ct.App. 1st Cir.1989), the court held that the removal and replacement of rotten boards in a cooling tower was not an ultrahazardous activity. The plaintiff, an independent contractor's employee, was in the course of performing the repair work when the board upon which he was walking broke, causing him to fall fifty feet. In affirming the trial court's granting of summary judgment in favor of the defendant, the court ruled that the activity "does not rise to the level of those activities enumerated in *Kent*, in which, with exercise of care and prudence, still encompass great risk of injury or harm." *Id.* at 1363. In *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406, 407 (5th Cir.1989), the plaintiff's employer was hired to perform a construction project on one of Chevron's platforms, which included changing the structure's grating decks. The court held that this type of activity cannot be classified as ultrahazardous. *Id.* at 407.[3]

The authority indicates clearly that, as a matter of law, Plaintiff was not engaged in an ultrahazardous activity *when he suffered his injury.* The court concludes, therefore, that Defendant is entitled to Summary Judgment dismissing this aspect of Plaintiff's complaint.

## 3. *Strict Liability*

Plaintiff has also alleged that Chevron is strictly liable under Articles 2322 and 2317. The court will address each Article in turn.

### A. *Article 2322*

■ In order to recover under Article 2322, Plaintiff must establish: (1) there was a building; (2) Defendant was its owner; and (3) there was a "ruin" caused by a vice in its original construction or by a neglect to repair. *Olsen v. Shell Oil Co.*,

---

**1.** *See also, Funderburk v. Maintenance Assoc., Inc.*, 640 F.Supp. 813, 814 (E.D.La.1986) ("... the principal has no duty to insure, through instructions or supervision, that the independent contractor will perform its obligations in a reasonable and safe manner.").

**2.** The Fifth Circuit relied upon the Louisiana Supreme Court's decision in *Kent* in enunciating the three criteria.

**3.** Other decisions which have held that particular activities are not ultrahazardous include the following: *O'Neal v. Int'l Paper Co.*, 715 F.2d 199 (5th Cir.1983) (dismantling a dilapidated boiler with a blow torch was not a ultrahazardous activity); *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir.1987), *cert. denied*, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988) (installation of drilling rig and drilling operations conducted on offshore platforms were not ultrahazardous activities); *Guillory v. Conoco, Inc.*, 521 So.2d 1220 (La.Ct.App. 3d Cir.1988), *writ denied*, 526 So.2d 801 (installing a new roof is not an ultrahazardous activity).

365 So.2d 1285 (La.1979). Plaintiff satisfies the first two elements since the platform is a building, and Defendant is the platform's owner. Plaintiff case fails, however, with regard to the third element.

The grating that Bama repaired deteriorated over time, and there is no evidence that there was a vice in its original construction. As for a neglect to repair, the court holds that Plaintiff does not have a viable claim under this theory since he was part of the crew hired to make the repairs. In *Stine v. Creel*, 417 So.2d 1243 (La.Ct. App. 1st Cir.1982), *writ denied*, 422 So.2d 163, the court declined to hold a defendant-owner of a warehouse strictly liable when the plaintiff was injured while repairing the roof. The court reasoned that the plaintiff was making the repairs in order to prevent the building from falling into ruin, and it was not the ruin of the building which caused the injury. Instead, the unsafe manner by which plaintiff made the repairs caused his injury. The court concluded that

> [t]o follow the rationale of Stine [the plaintiff] would be to place strict liability upon any owner who went about repairing a building. To the contrary, the law should and does encourage owners to repair. If they elect not to repair, then the owner is strictly liable for damages resulting from the ruin or collapse of his building.

The *Stine* decision makes it clear that Louisiana law will not hold an owner strictly liable for repairs made by an independent contractor when the owner is trying to prevent the building from falling into ruin by making the repairs. *See also, Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir.1987), *cert. denied*, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988); *Triplette v. Exxon Corp.*, 554 So.2d 1361 (La. Ct.App. 1st Cir.1989); *Temple v. General Ins. Co.*, 306 So.2d 915 (La.Ct.App. 1st Cir. 1974), *writ denied*, 310 So.2d 643 (La.1975).

Plaintiff argues, however, that Chevron should be liable since the company's routine inspection procedure should have detected the unsafe condition. He alleges that Chevron delayed the repair work until the building was actually in ruin at the time Bama was called in to make the repairs. Plaintiff offers no legal authority for his argument, and the court's examination of the facts and the relevant jurisprudence leads the court to conclude that Louisiana law would not impose liability on Defendant when Plaintiff was part of the repair crew that was hired to fix the platform's deteriorated condition. Accordingly, this court hold that Plaintiff cannot recover under Article 2322 in this matter.

### B. *Article 2317*

To recover under Article 2317, Plaintiff must prove "that he was injured by a thing, that the thing was in the defendant's custody, that there was a vice or defect creating an unreasonable risk of harm in the thing, and that the injured person's damage arose from that danger." *Ross v. La Coste de Monterville*, 502 So.2d 1026, 1028 (La.1987). Upon proof of these elements, Defendant would be liable unless he can prove that the damage was caused by the fault of the victim, by the fault of a third person, or by an irrestible force. *Id.*

Generally, a plaintiff cannot recover under Article 2317 when the plaintiff was injured by the very defect he was hired to repair. *Reed v. Shell Offshore, Inc.*, 872 F.2d 680, 682 (5th Cir.1989). In *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406 (5th Cir.1989), the Fifth Circuit held that liability under Article 2317 would not be imposed when an injury results from the contractor's method of performing repairs, instead of from the defective condition. Chevron hired the plaintiff's employer to upgrade a platform. This project involved the removal and replacement of old grating with new grating. The plaintiff fell through a hole, and the court ruled that the injury resulted from the negligent manner in which the independent contractor did the repair work. *Id.* at 409.

Plaintiff's Motion for Summary Judgment under Article 2317 is based upon his attempt to distinguish *Boutwell* from the instant litigation. Plaintiff avers that his accident did not result from either his own negligence or that of his employer, but was

caused instead by defective deck grating on which he had been working throughout the day.

This court finds that, notwithstanding Plaintiff's argument, the *Boutwell* decision's reasoning still applies and bars Plaintiff from recovering in this matter. It is undisputed that Ladue's accident occurred as a result of the very condition which Bama had been hired to repair. Plaintiff's injuries resulted from the manner in which Ladue performed his duties, since he should have stood upon new grating or upon the 12 inch structural beam when he performed his task. The court holds, therefore, that Plaintiff's cause of action under Article 2317 should be dismissed.

Since the court's disposition of this matter renders MOOT the Complaint in Intervention filed by Cynthia C. LeBourgeois, Stephen M. Wiles, and the law firm of Salley & Associates, the Complaint in Intervention is likewise dismissed. Accordingly;

IT IS ORDERED that Defendant's, Chevron U.S.A., Inc., Motion for Summary Judgment, should be and is GRANTED, dismissing Plaintiff's complaint in its entirety. Plaintiff's Motion for Summary Judgment, therefore, is DENIED.