YELVERTON, Judge.
In this suit involving an oil rig accident, John Ledet, Sr., and his wife Geraldine, the plaintiffs, appeal a summary judgment granted to three defendants: Petroleum Engineers, Inc., its employee, Harry Brown, and their insurer, Mt. Hawley Insurance Company. The trial court ruled that no genuine issue of material fact existed as to the claims of the plaintiffs against the moving defendants, and that the movers were entitled to a summary judgment as a matter of law. We reverse and remand for further proceedings.
The summary judgment evidence is in the record by way of depositions and affidavits. John Ledet, Sr., was employed by Diamond M Drilling Company as a derrick man. He was working on the day crew on a land based drilling rig in Calcasieu Parish.
The rig owner and operator, Moran Exploration, Inc., was represented on site by Petroleum Engineers, Inc. (PEI). Harry Brown, an experienced oil man, was assigned to the rig by PEI as its sole representative, or “company man.”
The persons at the well on the morning of July 4, 1984, when the accident happened, were the driller, the tool pusher, two roughnecks, Ledet, who was a derrick man, and the company man, Harry Brown. Everyone except Brown was an employee of Diamond M.
They were using a drill bit with jets attached. The jets were to regulate the rate at which drilling mud washed shavings from the bottom of the hole, thereby maximizing bit penetration. Bits are of different sizes, and there are jets of different sizes. Brown testified by deposition that it was his and PEI’s responsibility to supply the bits and jets needed to “make hole.”
On the date in question, it was determined that the bit in use had become dull and needed replacing. New jets could not be located on site. There is deposition testimony that Brown directed that the jets be removed from the old bit and placed in the new bit.
The driller directed Ledet to remove the jets. Jets are made of tungsten and are hard and brittle. Ledet used a tool not designed for that particular application. A piece of a jet fractured and a sliver of metal lodged in Ledet’s left eye causing injury and this suit.
The rules regarding the use of the procedural vehicle of summary judgment, La. C.C.P. arts. 966 and 967, are well settled. Our task on this appeal is to determine whether there are genuine factual disputes material to Ledet’s right to damages from these defendants.
The trial court’s general reasons for judgment provide us with little guidance as to what the judgment was based upon. Ledet argues on appeal that there are a number of disputes regarding the responsibilities and conduct of Brown and PEI, and that a resolution of these disputes is required to determine whether or not their conduct was the legal cause of the accident and therefore, a basis for the defendants’ liability.
The company man testified that it was his and PEI’s responsibility to provide the bits and jets for the job. He admitted that if the company man is doing his job, he will not run out of this equipment. There was some deposition testimony that the reason, the jets had to be taken out of the old bit was because new jets were not available. There was testimony that, although the insertion of jets is not dangerous, their removal, especially without the proper tool, is. It was because new jets were not available that Brown gave orders to remove and use the old ones. There was evidence that Brown, after having ordered the removal *633 of the jets, left the site. A search was made for the proper tool to remove the jets, but none could be found.
PEI and Brown take the position on this appeal that their relationship with Le-det’s employer was the relationship of principal and independent contractor. They rely on the law that a principal is not liable for the offenses an independent contractor commits in the course of performing its contractual duties. We agree that that is the law. Guillory v. Conoco, Inc., 521 So.2d 1220 (La.App. 3rd Cir.), writ denied 526 So.2d 801 (La.1988). Perhaps this is the reason the trial judge granted the motion for summary judgment. The appellees argue that the trial court’s ruling comports with Brown’s affidavit. It stated that Brown was the representative for the operator and that his duties were to monitor the progress of the work and supervise the general overall operation, but not to exercise direct supervision over the step-by-step process of accomplishing the work.
We fail to see how these conclusory statements in Brown’s affidavit can wipe out the effect of his testimony regarding PEI’s responsibility for supplying the bits and jets, and by implication, the tools required to change the jets. A reasonable construction of all of the summary judgment evidence indicates that Brown and PEI had some operational control over the performance of the job. There was testimony that the way it works on a particular day is, the company man tells the tool pusher what he wants to do, and the tool pusher tells the driller, and the driller tells his hands. This was referred to as the “chain-of-command,” the top link in the chain being Brown and PEI. On learning that the bit was dull, Brown told the driller to pull it and replace it. Thinking he was out of jets of the size needed, Brown gave instructions to remove the jets from the old bit and put them in the new bit. This sounds like operational control.
As stated in Guillory v. Conoco, Inc., supra, one of the five conditions present where there is the relationship of principal and independent contractor, is where the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered. We do not have in this record the benefit of any written contract. The deposition testimony cannot be interpreted as establishing as an undisputed fact that PEI and Brown had no operational control of the job. In the absence of such a factual finding, it cannot be said as a matter of law that there was a relationship of principal and independent contractor present in this case. In the absence of this legal insulation against liability, these appellees could conceivably be found liable to Ledet by the application of a duty-risk analysis. Chandler v. Bunge Corp., 489 So.2d 275 (La.App. 4th Cir.), writ denied, 492 So.2d 1219 (La.1986).
For these reasons we reverse the summary judgment, at appellee’s cost, and remand the case for further proceedings.
REVERSED.