STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0895

LAFAYETTE STEEL ERECTOR, INC., d/b/a LSE CRANE AND
TRANSPORTATION, AND IC RIGGING, LLC

VERSUS

G. KENDRICK, LLC, LOW LAND CONSTRUCTION CO., INC.,
UNITED BULK TERMINALS DAVANT, LLC, UNDERWRITERS
AT LLOYD'S, LONDON, AND ATLANTIC
SPECIALTY INSURANCE COMPANY

Judgment rendered: **AUG 3 0 2023**

\* \* \* \* \*

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 660341

The Honorable Wilson E. Fields, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| James Michael Dill<br>G. Austin Love<br>Lafayette, Louisiana | Attorneys for Plaintiff/Appellant<br>Lafayette Steel Erector, Inc., d/b/a<br>LSE Crane and Transportation |
| Jake P. Skaggs<br>Houston, Texas | Attorney for Intervenor/Appellant<br>Mitsui Sumitomo Insurance Company<br>of America |
| Michael William McMahon<br>Kirk N. Aurandt<br>Paul R. Trapani, III<br>Covington, Louisiana | Attorneys for Defendant/Appellee<br>United Bulk Terminals Davant, LLC |
| Stephen F. Butterfield<br>Ryan M. Tucker<br>New Orleans, Louisiana | Attorneys for Defendant/Appellee<br>G. Kendrick, LLC |
| Ross M. Molina<br>Donald G. Cassels, III<br>New Orleans, Louisiana | Attorneys for Defendant/Appellee,<br>Certain Underwriters at Lloyd's, London |

\* \* \* \* \*

**BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.**

McCland, J. Concurs

**HOLDRIDGE, J.**

Lafayette Steel Erector, Inc., d/b/a LSE Crane and Transportation ("LSE"), and Mitsui Sumitomo Insurance Company of America ("Mitsui") appeal a summary judgment rendered in favor of United Bulk Terminals Davant, LLC ("United Bulk") on April 14, 2022, dismissing their claims against it with prejudice. For the following reasons, we affirm the trial court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

On August 11, 2017, LSE and IC Rigging, LLC ("IC") (collectively "LSE/IC"), filed a petition for damages against G. Kendrick, LLC ("Kendrick") and its insurer, Certain Underwriters at Lloyd's, London ("Underwriters"); Low Land Construction Co., Inc. ("Low Land") and its insurer, Atlantic Specialty Insurance Company ("Atlantic") and United Bulk.[1] In the petition, LSE/IC asserted that in May of 2017, United Bulk hired Kendrick as the general contractor on a demolition project to remove its Krupp Stacker Reclaimer at the plant it owned in Davant, Louisiana.[2] Kendrick subcontracted with Low Land to provide services on the project.

On June 13, 2017, a crane owned by Low Land was being used in the demolition of the reclaimer when it fell and struck a crane owned by IC and leased to LSE (hereinafter referred to as "the LSE crane"). The Low Land crane was being operated by Jason Guidry, an employee of Low Land for approximately fifteen years. The LSE crane was being operated by Jason Robichaux, an employee of LSE. The cutter on the project was David Hernandez, the owner and operator of LDH Recycling, LLC (LDH). The accident caused extensive damage to the LSE crane.

---

[1] LSE's original petition apparently improperly named the Underwriters defendant as Underwriters at Lloyd's London.

[2] Due to its large size, demolishing the reclaimer required the use of two cranes and a cutter to dismantle portions of the structure. Kendrick did not employ cutters and did not own or operate any cranes. Therefore, it subcontracted Low Land to provide cranes and LDH to provide the cutter necessary to complete the demolition project.

2

In its petition, LSE/IC alleged that the accident was caused by the negligence of Kendrick and Low Land. As to United Bulk specifically, LSE/IC alleged in the petition that United Bulk was at fault for the accident and resulting damages "for the negligent hiring of [Kendrick] for this project."[3] LSE/IC later amended the petition to add LDH and its insurer, Mesa Underwriters Specialty Insurance Co. ("Mesa"), as defendants.

On October 2, 2017, Kendrick answered the petition for damages; asserted cross-claims against Low Land, Atlantic, and Underwriters; and asserted third-party demands against LDH and its insurer, Mesa, its insurance agency, Giambelluca Insurance Agency, and ABC Insurance Agency.[4] On October 4, 2017, Low Land and Atlantic answered the petition for damages, filed a cross-claim against Kendrick, and filed a third-party demand against David Burner, an independent contractor allegedly hired by Kendrick.

On November 3, 2017, United Bulk answered the petition for damages; asserted cross-claims against Kendrick, Low Land, LDH, Underwriters, Atlantic, and Mesa; and asserted a counterclaim against LSE. United Bulk admitted that it owned the terminal where the crane was damaged, that it contracted with Kendrick for the removal of its Krupp Stacker Reclaimer, that Low Land was acting as a subcontractor to Kendrick and a Low Land employee was operating the Low Land crane, that Underwriters insured Kendrick, and that the accident was caused by LSE and Low Land's negligence. United Bulk alleged that the damages to the crane were

---

[3] We note that LSE/IC did not allege that United Bulk contractually reserved the right to control the work for which it contracted Kendrick to perform. It also did not allege that United Bulk breached any assumed duty or exercised operational control over the project or that the project involved ultrahazardous activity.

[4] Kendrick asserted that it subcontracted with LDH to provide personnel and expertise in connection with the project. Kendrick asserted that it also subcontracted with Low Land to furnish a crane for the project. Low Land subcontracted with LSE to furnish an additional crane and personnel, including an operator.

3

caused by entities or persons for which it was not legally responsible. In its cross-claims, United Bulk sought to recover damages to its conveyor system which occurred when the crane fell.

On November 13, 2017, Mitsui, a partially subrogated insurance carrier for the crane leased by LSE, intervened in the suit. Mitsui alleged that it was entitled to damages from Low Land, Kendrick, and United Bulk as a result of the accident. As to United Bulk, Mitsui alleged it was liable for negligently hiring Kendrick.[5] Mitsui amended its petition in intervention on February 20, 2018, to add LDH as a defendant. On January 11, 2018, United Bulk answered Mitsui's petition in intervention, making the same admissions as it did in its answer to LSE/IC's petition.

On October 22, 2020, AIG UK Limited and Zurich Insurance PLC, UK Branch, filed an unopposed motion to intervene in the suit as the subrogated insurers of United Bulk, which was granted by the trial court on October 23, 2020.

After various pleadings were filed by the parties, on October 25, 2021, Kendrick filed a motion for summary judgment seeking the dismissal of the claims of LSE/IC, Mitsui, Low Land, and Atlantic against it. In its memorandum in support of its motion, Kendrick asserted that as the general contractor of the demolition project, it had no duty to oversee or assist the performance of the independent contractor's work. On November 5, 2021, Underwriters filed a motion to adopt Kendrick's motion for summary judgment.

On November 16, 2021, United Bulk filed a motion for summary judgment seeking dismissal of LSE/IC's and Mitsui's claims against it.[6] In its memorandum

---

[5] As was the case with LSE/IC's petition, Mitsui did not allege any other basis for United Bulk's liability. See footnote 3.

[6] United Bulk filed the following documents in support of its motion for summary judgment: rule 1442 depositions of United Bulk through Philipp Kroepels and J. Scott Ballbach; excerpts from the depositions of Glenn S. Kendrick, Donald A. Voiers, Jason Guidry, Jason Robichaux, and David Mendez Hernandez; the Master Service Contract between United Bulk and Kendrick; and the Project Manual for the Krupp Stacker Reclaimer Demolition.

4

in support of its motion, United Bulk asserted that it could not be held liable under a theory of negligent hiring because it had previously contracted with Kendrick with good results, and there was no evidence that at the time of hiring Kendrick for the project, United Bulk knew, or had reason to believe, that Kendrick was irresponsible. United Bulk also argued that as a principal it could not be found liable for the fault or neglect of an independent contractor because the work performed was not ultrahazardous and it did not contractually maintain the right to directly supervise the crane operations, nor did it actually do so.

LSE/IC filed a memorandum in opposition to United Bulk's summary judgment motion arguing that summary judgment was not appropriate under the facts of this case because there were genuine issues of material fact as to whether United Bulk negligently hired Kendrick when it failed to exercise due diligence in connection with Kendrick's competence to conduct this project safely; negligently retained Kendrick when it chose to permit Kendrick to continue the demolition work after a prior accident; assumed a duty of supervision and oversight over Kendrick when it imposed comprehensive supervision and oversight procedures after a prior accident; and reserved operational control over Kendrick when it imposed those comprehensive supervision and oversight procedures.[7] LSE/IC also contended that there were genuine issues of fact as to whether United Bulk retained operational control over its contractors in light of the "complex and exhaustive supervision procedures" and whether the contractors were engaged in an inherently dangerous activity.

---

[7] In support of its opposition, LSE/IC filed excerpts from the rule 1442 deposition of United Bulk through J. Scott Ballbach; the Project Manual for Krupp Stacker Reclaimer Demolition; United Bulk's Rules and Regulations for Contactors; United Bulk's Contractor Health, Safety, Security & Environmental Manual; the Master Service Contract between United Bulk and Kendrick; and excerpts from the depositions of Steven M. Robichaux, Donald A. Voiers, Jeremy Joseph Bergeron, and Jason Guidry.

Mitsui also opposed United Bulk's motion for summary judgment, arguing that there remained genuine issues of material fact as to United Bulk's breach of duty. Specifically, Mitsui argued in its memorandum in opposition to United Bulk's motion for summary judgment that there remained genuine issues of material fact as to whether United Bulk breached its duty by negligently hiring Kendrick to oversee the crane activities on the project and whether United Bulk assumed certain duties related to job site safety and whether it breached those duties.[8]

On March 14, 2022, the trial court held a hearing on United Bulk's and Kendrick's motions for summary judgment. After the hearing concluded, the trial court took the matters under advisement. On March 16, 2022, the trial court issued its rulings in open court, granting United Bulk's motion for summary judgment and dismissing all of the claims asserted against it by LSE/IC and Mitsui. On April 6, 2022, the trial court signed a judgment in accordance with its oral ruling.[9] The trial court also granted Kendrick's motion for summary judgment and signed a judgment on April 14, 2022, dismissing the claims of LSE/IC, Mitsui, Low Land, and Atlantic against Kendrick and Underwriters. These judgments were designated as final by the trial court.

Subsequently, LSE and Mitsui devolutively appealed the trial court's judgment dismissing United Bulk from the suit in this appeal. LSE, Low Land, and Mitsui separately appealed the trial court's judgment dismissing Kendrick and Underwriters from the suit. See **Lafayette Steel Erector, Inc. d/b/a LSE Crane and Transportation v. G. Kendrick, LLC,** 2022-0892 (La. App. 1 Cir. 8/29/23), ___ So.3d ___ "**Lafayette Steel Erector I**"). Pursuant to an unopposed motion by

---

[8] Mitsui filed the following documents attached to its opposition memorandum: deposition excerpts from Glenn S. Kendrick, Donald A. Voiers, Jeremy Joseph Bergeron, Jason Guidry, David Mendez Hernandez, and Steven M. Robichaux.

[9] The trial court adopted United Bulk's memorandum in support of its motion for summary judgment as its reasons for judgment.

Kendrick, these appeals were consolidated in this court for purpose of argument and submission only, and the other appeal was addressed in a separate opinion previously rendered by this court. **Id.**

On appeal, LSE contends that the trial court erred in granting summary judgment in favor of United Bulk when LSE furnished competent evidence that United Bulk failed to conduct "the most basic due diligence" in retaining Kendrick as a general contractor; that United Bulk assumed and breached its duties in connection with Kendrick's demolition work; and that United Bulk asserted operational control over Kendrick and the "demolition operations" were ultrahazardous, thereby rendering United Bulk vicariously liable for any acts or omissions of Kendrick. Mitsui contends that the trial court erred in granting United Bulk's summary judgment motion because it erred in finding that there was no genuine issue of material fact that United Bulk breached its duty to retain a competent general contractor to manage the demolition project and that United Bulk breached the duty it assumed to supervise and oversee the safety of crane operations during the demolition work.

## STANDARD OF REVIEW

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Lucas v. Maison Insurance Co.**, 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 83-84.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. See La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether

there is a genuine need for trial. **Hines v. Garrett,** 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).[10]

On a motion for summary judgment, the initial burden of proof rests with the mover. See La. C.C.P. art. 966(D)(1); **Lucas,** 358 So.3d at 84. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all

---

[10] The motion for summary judgment at issue on this appeal was filed and decided under La. C.C.P. art. 966 prior to its amendment by 2023 La. Acts No. 317, § 1, and 2023 La. Acts No. 368, § 1, which became effective on August 1, 2023.

8

objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. See La. C.C.P. art. 966(D)(2).

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. **Wolfe v. Quad-Area Community Action Agency, Inc.**, 2022-0203 (La. App. 1 Cir. 9/16/22), 352 So.3d 992, 994. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Collins**, 298 So.3d at 194-95. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Id.** at 195.

Summary judgment is seldom appropriate for determinations based on the subjective facts of intent, motive, malice, good faith, or knowledge. See **Jones v. Estate of Santiago**, 2003-1424 (La. 4/14/04), 870 So.2d 1002, 1006. These subjective facts call for credibility evaluations and the weighing of testimony. **Berthelot v. Indovina**, 2021-1546 (La. App. 1 Cir. 6/3/22), 343 So.3d 209, 215. A trial court cannot make credibility decisions on a motion for summary judgment. **Monterrey Center, LLC v. Education Partners, Inc.**, 2008-0734 (La. App. 1 Cir. 12/23/08), 5 So.3d 225, 232. Furthermore, the circumstantial evidence usually necessary for proof of motive or intent requires the trier-of-fact to choose from competing inferences, a task not appropriate for a summary judgment ruling. **Irving v. Katie Santo, Inc.**, 2018-1619 (La. App. 1 Cir. 6/13/19), 2019 WL 2609035, *5

9

(unpublished); **Louisiana AG Credit, PCA v. Livestock Producers, Inc.**, 42,072 (La. App. 2 Cir. 4/4/07), 954 So.2d 883, 891, writ denied, 2007-1146 (La. 9/14/07), 963 So.2d 1001.

## APPLICABLE LAW

LSE/IC and Mitsui asserted claims of negligent hiring against United Bulk in their petitions. Louisiana courts have adopted a duty-risk analysis in determining whether liability for negligence exists under the facts of a particular case. **Van Cleave v. Temple**, 2018-1353 (La. App. 1 Cir. 5/31/19), 278 So.3d 1005, 1011. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and (5) proof of actual damages (damages element). See **Farrell v. Circle K Stores, Inc.**, 2022-00849 (La. 3/17/23), 359 So.3d 467, 473. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Landers v. USIC Locating Servs., Inc.**, 2020-0890 (La. App. 1 Cir. 4/26/21), 324 So.3d 1070, 1073-74.

As for LSE/IC's specific allegations of negligent hiring, the jurisprudence has recognized that one who hires an irresponsible independent contractor may be independently negligent. **Evans v. Allstate Insurance Co.**, 194 So.2d 762, 767 (La. App. 1 Cir. 1967); **Hemphill v. State Farm Ins. Co.**, 472 So.2d 320, 324 (La. App. 3 Cir. 1985). To determine whether a principal is negligent for hiring an irresponsible independent contractor, the court must consider the principal's knowledge at the time of the hiring. **Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.**, 10-948 (La. App. 5 Cir. 6/14/11), 67 So.3d 1277, 1282-83, writ

10

granted in part and remanded on other grounds, 2011-2174 (La. 11/18/11), 75 So.3d 466; **Perkins v. Gregory Mfg. Co.**, 95-1396 (La. App. 3 Cir. 3/20/96), 671 So.2d 1036, 1040, writ denied, 96-971 (La. 5/31/96), 673 So.2d 1039. A claim for negligent hiring is cognizable only if the claimant can show that the principal had knowledge when it hired the independent contractor that the independent contractor was irresponsible, and negligent conduct that occurs after the hiring is not determinative of the claim. See **Guillory v. Conoco, Inc., Continental Oil Co.**, 521 So.2d 1220, 1224-25 (La. App. 3 Cir.), writ denied, 526 So.2d 801 (La. 1988). Where the principal has previously hired the contactor with good results, and there is no evidence in the record to demonstrate the principal's prior negligent hiring practices, a claim for negligent hiring fails. **McCarroll v. Prime Cut Lawn Care & Tractor Work, L.L.C.**, 2010-1638 (La. App. 1 Cir. 3/25/11), 2011 WL 1104132, *6 (unpublished opinion).

In its motion for summary judgment, United Bulk alleged there were no genuine issues of material fact as to its liability for the work of an independent contractor. Generally, a principal is not liable for the offenses committed by an independent contractor while performing its contractual duties. See **Thompson v. Winn-Dixie Montgomery, Inc.**, 2015-0477 (La. 10/14/15), 181 So.3d 656, 665. However, there are two exceptions to the general rule of non-liability: (1) where the work performed by the contractor is ultrahazardous; or (2) if the principal reserves the right to supervise or control the work of the independent contractor. **Id.**

Whether an activity qualifies as ultrahazardous in Louisiana is a question of law. **Pontchartrain Natural Gas System v. Texas Brine Co., LLC**, 2018-1249 (La. App. 1 Cir. 12/30/20), 317 So.3d 715, 751-52. Three factors have evolved in order to determine whether an activity is ultrahazardous: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the

11

activity must not require substandard conduct to cause injury. **Id**. An activity is ultrahazardous if all three factors are present. See **Sandbom v. BASF Wyandotte, Corp.**, 95-0335 (La. App. 1 Cir. 4/30/96), 674 So.2d 349, 354. As to the first factor, that the activity must relate to land or some other immovable, the summary judgment evidence shows that the crane workers' demolition project did not relate to land or an immovable. Also, as to the third factor, the activity in question would require substandard conduct to cause injury. Therefore, we find that the activity in question was not ultrahazardous. The second exception for a general contractor's non-liability for an independent contractor is when the principal reserves the right to supervise or control the work of the independent contractor. **Triplette v. Exxon Corp.**, 554 So.2d 1361, 1363 (La. App. 1 Cir. 1989). It is not the supervision and control that is actually exercised that is significant, but it is the right to exercise it that is of primary concern in determining whether a principal may be held liable for the torts of an independent contractor. **Id**.

## DISCUSSION

In this case, United Bulk as the mover on the motion for summary judgment would not bear the burden of establishing negligence at trial; therefore, its burden on summary judgment was to establish that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1). We must determine whether United Bulk met its burden on the motion for summary judgment and whether LSE/IC and Mitsui showed there were genuine issues of fact that preclude the granting of summary judgment.

For the trial court to find that United Bulk was negligent in hiring Kendrick, it had to find that Kendrick was negligent. The parties did not argue that the independent contractors were not competent or qualified to perform the work for the demolition project. In the companion appeal, this court addressed the issue of Kendrick's negligence on its motion for summary judgment seeking dismissal from

12

this suit. **Lafayette Steel Erector I**, ___ So.3d at ___. This court affirmed the court's dismissal of Kendrick from the suit because LSE, Low Land, and Mitsui could not establish that there were genuine issues of fact concerning the duty or the cause-in-fact element of their negligence claim against Kendrick. **Id.** Kendrick as the general contractor for the demolition project could not be held liable for the alleged acts or omissions of the independent contractors, LSE, Low Land, and LDH, and its employees, Jason Guidry, Jason Robichaux, and David Hernandez. **Id.** This court determined that the evidence submitted in support of the summary judgment motion established that neither exception to the general rule that principals are not liable for the acts of independent contractors applied because the evidence established that the demolition project was not ultrahazardous and that Kendrick did not exercise any type of control over the independent contractors. **Id.** More specifically, this court reviewed the summary judgment evidence, stating:

> The testimonies of the two crane operators and cutter, who were not employees of Kendrick, reveal that the crane workers solely determined how to cut and rig for the demolition project and that they did not need or want any directives from Kendrick. Specifically, on the day of the accident, the record establishes that the two crane operators and cutter unilaterally decided to change the plan on how to proceed with the demolition project, without Kendrick's knowledge, thereby causing the accident.

**Id.**

Because this court has upheld the trial court's finding that Kendrick was not negligent and therefore was not negligent in causing the accident in **Lafayette Steel Erector I**, United Bulk cannot be found to have negligently hired Kendrick as Kendrick was not an "irresponsible independent contractor."[11] Without any fault on

---

[11] In this case, since this court upheld the trial court's finding that Kendrick was not negligent in **Lafayette Steel Erector I**, this court need not consider any knowledge United Bulk had regarding Kendrick when it hired Kendrick. Unlike this case, in the cases discussed earlier where the courts considered negligent hiring claims and the knowledge the general contractor had when hiring the independent contractor, there were no prior determinations that the contractor was not negligent. **Certified Cleaning & Restoration, Inc.**, 67 So.3d at 1282; **Perkins**, 671 So.2d at 1040; **Guillory**, 521 So.2d at 1224-25; **Hemphill**, 472 So.2d at 324-25; **Evans**, 194 So.2d at 767. If the independent contractor is found to have no negligence or fault, and therefore, is not an irresponsible independent contractor, there can be no valid negligent hiring claim against the principal.

the part of Kendrick, there can be no cause-in-fact or legal cause as the basis of any claim against United Bulk. Additionally, for the reasons given in this court's companion appeal, the exceptions to the general rule that principals are not liable for the acts of independent contractors do not apply to LSE/IC's and Mitsui's claims against United Bulk. More specifically, as set forth in **Lafayette Steel Erector I**, Kendrick did not exercise any control over the independent contractors it hired on the date of the accident as to how to cut and rig the demolition project. Likewise, United Bulk as the owner did not exercise any control over Kendrick or the subcontractors on the demolition project, nor did it assume any duty of supervision and oversight. The summary judgment evidence discussed above shows that the crane operators and cutter controlled the work, not United Bulk, particularly on the date of the incident. Accordingly, on our *de novo* review, we find that the trial court did not err in granting summary judgment in favor of United Bulk and dismissing the claims of LSE and Mitsui with prejudice.

## CONCLUSION

For the foregoing reasons, the April 6, 2022 trial court judgment granting the motion for summary judgment filed by United Bulk Terminals Davant, LLC and dismissing with prejudice the claims of Lafayette Steel Erector, Inc., d/b/a LSE Crane and Transportation, IC Rigging, LLC, and Mitsui Sumitomo Insurance Company of America against United Bulk Terminals Davant, LLC, is affirmed. All costs of this appeal are assessed to Lafayette Steel Erector, Inc., d/b/a LSE Crane and Transportation and Mitsui Sumitomo Insurance Company of America.

**AFFIRMED.**

---